# OPERATING AGREEMENT
# OF
# Legacy Wealth Properties, LLC

THIS OPERATING AGREEMENT of **LEGACY WEALTH PROPERTIES, LLC**, a Virginia limited liability company with a business address at 15338 Colonel Tansill Court, Woodbridge VA 22193 (the "Company"), is made as of the __30th__ day of __September__ 2015, by and between its Members, whose names and addresses are set forth on Exhibit A attached hereto. In consideration of the mutual covenants contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by all parties, the parties agree as follows:

1. **Validity.** When properly endorsed by all necessary parties, this Operating Agreement shall supercede and replace all earlier versions, amendments and iterations of this agreement and represent the entire Operating Agreement for the Company except that Amendments properly approved and endorsed may serve to modify, replace or amend the terms of this Operating Agreement.

2. **Formation.** The Members have formed the Company as a limited liability company pursuant to the Virginia Limited Liability Company Act (the "Act") by causing Articles of Organization to be filed with the state of Virginia State Corporation Commission accepted on __August 31, 2015__, the date on which the Department issued a certificate of organization in respect of the Company. The rights and liabilities of the Members shall be as provided in the Act, except as otherwise provided herein.

3. **Purpose.** The purpose of the Company shall be to invest in, acquire, hold and manage financial and participation interests in real estate.

4. **Members.** The names of the Members as of the date of this Agreement ("Initial Members") are as set forth on Exhibit A attached hereto. Members shall be the persons whose names are set forth on Exhibit A, and any person admitted as a new Member or a substitute Member pursuant to the terms of this Agreement.

5. **Management of the Company.** The Company's business and affairs shall be overseen and approved by the Managing Member. The Managing Member shall approve all significant decisions and transactions of or affecting the Company, including but not limited to the hiring or termination of officers and employees, any purchase or financial obligation of the Company in excess of $1,000.00 and the ratification of any contract or agreement which obligates the company to pay or provide goods or services, the fair market value of which equals or exceeds $1,000.00. The Managing Member will devote such time, effort and skill in the management of the Company's business affairs as each deems necessary and proper for the Company's welfare and success. The Members expressly recognize that the Managing Member has substantial other business activities and agree that the Managing Member shall not be bound to devote all of his business time to the affairs of the Company.

6. **Election of Managing Member.** The Members shall elect from amongst the Members a Managing Member. The initial Managing Member shall be __Jerome Johnson__ Jerome Johnson shall serve as Managing Member in perpetuity or until seventy five percent (75%) of the Members holding Participation Units shall elect another Member to serve as Managing Member at the annual meeting of the

Members next following his/her election, but notwithstanding the expiration of a Member's term he/she shall continue to serve in such capacity until his/her successor is duly elected, unless sooner removed by or as a result of (i) the affirmative vote of Members in accordance with the provisions herein, (ii) operation of law, (iii) an order or decree of any court of competent jurisdiction, (iv) voluntary resignation, or (v) the death or Bankruptcy of the Member.

7. Unit(s). The measure of a Member's ownership interest in the Company at any time, including the right of such Member or Successor in Interest to any and all distributions in respect of such ownership interest and the measure of the rights of a Member of the Company, pursuant to the provisions of this Agreement, to participate in the management and affairs of the Company and to vote on Company matters shall be referred to as a Unit. Each Member's Units are as set forth on Exhibit A hereto as amended from time to time.

a. Economic Interest in Company. A Member's percentage economic ownership interest in the Company shall be measured by the total number of Economic and Participation Units attributed to such Member.

b. Votes Allocated to Units. The owner of each Economic Unit shall be afforded one vote per Unit when so entitled to vote on a particular issue. The owner of each Participation Unit shall be afforded one vote per Unit when so entitled to vote on a particular issue.

c. Economic Units. Members owning Economic Units shall be entitled to vote in the elections for the purchase of additional assets, additional capital contributions and any other issue the Managing Member in his discretion puts before the Members owning Economic Units.

d. Participation Units. Members owning Participation Units shall be entitled to vote in the elections for the Managing Member, Amendments to the Articles of Organization, Amendments to the Operating Agreement, appointment and removal of the Managing Member, appointment and removal of Officers, loans to the company, capital contributions of Members, expenditures by the Company or obligations of the Company exceeding $5,000.00 and any other matter Members owning Economic Units shall be entitled to vote on.

8. Initial Capital Contribution. Upon execution of this Agreement, each Initial Member, in exchange for the Member's ownership interest or Units in the Company, shall contribute as his/her initial Capital Contribution to the Company the amount of cash, value of services or item(s) of Property, as the case may be, set forth opposite such Member's name on Exhibit A attached hereto.

9. Additional Capital Contributions. If, in the discretion of the Managing Member, additional capital is needed by the Company for operating expenses, debt service, asset purchases or other Company obligations or to protect and preserve the value of the Company or the Property, the Managing Member may, at any time and from time to time, call for additional Capital Contributions from the Members, in proportion to their respective Percentage Economic Interests, in an aggregate amount from all Members not to exceed  fifty thousand dollars ($50,000.00). Each Member shall contribute his/her respective additional Capital Contribution(s) within thirty (30) days of notice of such capital call by the Managing Member. If a Member has refused or is unable to contribute his/her respective additional Capital Contribution(s) within the time allotted, the Managing Member may secure such additional Capital Contribution(s), first from current Members of the Company, and next from new Members. If a Member refuses or is unable for any reason to contribute his/her share of the capital contribution that member may be expelled pursuant to the provisions set forth herein, below.

10. **Loans.** The Managing Member may endeavor to obtain a loan or loans to the Company, from time to time, for necessary capital on reasonable terms, in order to finance the ownership and operation of the Company and/or Company property or to otherwise refinance outstanding Company indebtedness.

11. **Guaranty of Company Indebtedness** A Member shall not be obligated to guarantee Company indebtedness or other contractual obligations unless he/she agrees to do so. If, however, with the consent of the Managing Member, a Member guarantees any debt or other contractual obligations of the Company ("Guaranteed Debt") and is subsequently called upon by the creditor holding such Guaranteed Debt to pay on his/her guarantee (which Member shall be referred to below as a "Paying Member"), in whole or in part, the Paying Member (whether or not such Paying Member remains a Member) shall be entitled to indemnification from the Company.

12. **Reimbursement for Expenses and Services.** The Company shall promptly reimburse Members, Officers and employees for expenses advanced on the Company's behalf or services rendered on the Company's behalf provided that a Majority of the Board of Members approve of the expense or the rendition of services on behalf of the Company prior to such Member, Officer and employee incurring such expense or rendering such services.

13. **Cash Available for Distribution.** Subject to the provisions contained herein, Cash Available for Distribution shall be allocated and distributed among the Members and any Successors in Interest on a pro rata basis in proportion to their respective Percentage Interests in Economic Units and Participation Units.

14. **Net Income, Net Loss and Tax Credits.** Subject to the provisions herein, all Net Income, Net Loss and tax credits, shall be allocated among the Members and any Successors in Interest in proportion to their respective Percentage Interests unless the Managing Member concludes otherwise by majority vote.

15. **Tax Withholding.** In the event that the Company is required to pay or withhold any federal or state tax attributable to distributions or allocations to any Member, such withholding shall come solely out of the distributions or allocations to such Member (but shall be treated as an actual distribution to such Member). If the required withholding exceeds such distributions, such Member shall be obligated immediately to contribute to the Company cash in an amount equal to such excess plus interest at 10% until paid.

16. **Gain and Loss from Sale.** Subject to the provisions herein, Gain and Loss from Sale shall be allocated among the Members and any Successors in Interest in proportion to their respective Percentage Interests unless the Members conclude otherwise by super-majority vote.

17. **Books and Reports.**

    a. Accurate and complete books of account shall be kept by the Members and entries promptly made therein of all of the transactions of the Company, and such books of account shall be maintained at the Principal Office of the Company and shall be open at all times to the inspection and examination of the Members of the Company. The books shall be kept on the basis of accounting selected by the accountant regularly servicing the Company, and the fiscal year of the Company shall be the calendar year. A compilation, review, or audit of the Company, as shall be determined by the Members in accordance with this Agreement, shall be made as of the closing of each fiscal year of the Company by the accountants who shall then be engaged by the Company.

b. The Company shall maintain the books of account, and the following records at the Principal Office of the Company, subject to inspection and copying during ordinary business hours at the reasonable request and expense of any Member a current list of the full name and last known business and/ or residential address of each Member, former Member and other holder of a Membership interest; a copy of the Articles of Organization and all Certificates and Amendments thereto of the Company, together with any executed powers of attorney pursuant to which any certificate was executed, a copy of this Agreement and any amendments thereto; a copy of the Limited Liability Company's federal, state and local income tax returns for the five most recent fiscal years; a copy of any effective/current regulations as set forth by the Virginia or any other relevant government agency, along with the Company's financial statements for the five most recent years; A writing setting forth: (i) the amount of cash and/or property along with relevant statements as to the agreed value of the property and/or services contributed or agreed to be contributed by each Member; (ii) any agreed upon time or event causing the Members to make additional contributions to the Company; Copies of records that would enable a member to determine the relative voting rights, if any, of the Members; and original statements from all of the Company's financial accounts including checking accounts, savings accounts, investment accounts, and certificates of deposit.

c. A financial report shall be provided at each meeting of the Board of Members and at each meeting of the Members.

18. **Power and Authority of the Managing Member.** Except as otherwise limited herein, the Managing Member shall (i) exercise complete and exclusive control of the management of the Company's business and affairs and (ii) have the right, power and authority on behalf of the Company, and in its name, to exercise all of the rights, powers and authorities of the Company under the Act, except as otherwise expressly limited in this Agreement.

19. **Meetings of Members.**
a. A Member shall have one vote for each unit owned on each matter coming before the Members. Any Member not present at a meeting may vote on any matter by general or specific proxy and/or by power of attorney directed to a Member present, or by specific instructions in writing. A quorum for the transaction of any particular business at a meeting of Members shall exist if a majority of the owners of Participation and Economic Units are present in person or represented by proxy, power of attorney or other written instruction. Action of the Members shall be by majority vote of all the Units present and eligible to vote.

b. Meetings of the Members shall be called at places within or without the Virginia, by conference call and at times fixed by resolution of the Members, or upon call of the Managing Member or a majority of Members. Officers or Members of any Committee designated thereby may participate in a meeting of the Members. Members may conduct meetings through the use of any means of communication whereby all persons participating in the meeting can simultaneously hear each other, and participation at such meetings shall constitute presence in person at such meeting. A written record shall be made of any action taken at a meeting conducted by such means of communication.

c. The Secretary or any officer performing the Secretary's duties shall give not less than 24 hours' notice in person or by letter or telephone, electronic mail, telegraph, teletype or other form of wire or wireless communication of all meetings of the Members, provided that notice need not be given of regular meetings held at times and places fixed by resolution of the Members. Oral notice is effective when communicated if communicated in a comprehensible manner. Meetings may be held at any time without notice if all the Members are present, or those not present waive notice as provided in the provisions herein. Notice of meetings of the Members need not state the purpose of the meeting.

d.  **Waiver of Notice by Member.** A Member may waive any notice required by this Agreement before or after the date and time stated in the notice, and such waiver shall be equivalent to the giving of such notice. Except as provided in the next sentence hereof, the waiver shall be in writing, signed by the Member entitled to the notice, and filed with the Company records. A Member's attendance at or participation in a meeting waives any required notice to him of the meeting unless the Member at the beginning of the meeting or promptly upon his/her arrival objects to holding the meeting or transacting business at the meeting and does not thereafter vote for or consent to action taken at the meeting.

e.  **Presumption of Assent.** A Member who is present at a meeting of the Members or a Committee of the Managing Member when Company action is taken is deemed to have assented to the action taken unless (a) he/she objects at the beginning of the meeting, or promptly upon his/her arrival, to holding it or transacting specified business at the meeting; or (b) he/she votes against, or abstains from, the action taken. The Secretary or any other officer performing the Secretary's duties shall maintain accurate records of all votes of the Members and their respective Units.

20. **Compensation of Members.** By resolution of the Managing Member, Members may be allowed a fee and expenses for attendance at all meetings, as well as discounts and other privileges. Nothing herein shall preclude Members from serving the Company in other capacities and receiving compensation for such services. Members of a Committee may be allowed like compensation for attending Committee meetings.

21. **No Duty to Consult.** Except as otherwise provided herein, the Managing Member shall have no duty or obligation to consult with or seek the advice of the Members in connection with the conduct of the business of the Company.

22. **Transactions with Member, Members and Affiliates.** The Managing Member may appoint, employ, contract, or otherwise deal with any Person, including a Member and Affiliates, individuals with whom a Member or Member is related, and with Persons that have a financial interest in a Member or Member or in which a Member or Member has a financial interest, for transacting the Company's business; provided, however, these or other payments under the terms of contracts with such related parties shall not be in excess of prevailing competitive rates for such transactions.

23. **Appointment of Officers.** The Managing Member may appoint from among the Members, one or more Vice Managing Members, a Secretary, a Treasurer, and such other officers as they shall deem necessary to perform the duties assigned to officers of the Company by the Managing Member. Any Member may hold two or more offices. The officers of the Company shall have such authority to perform such duties in the management of the Company as are provided in this Agreement or as may be determined by resolution of the Members not inconsistent with this Agreement. The appointment or election of an officer shall not of itself create any contract rights in favor of the officer. All officers shall hold office until their successors are elected unless sooner removed from office by the Board of Members or there is a resignation.

24. **Removal of Officers; Vacancies.** Any officer of the Company may be removed summarily with or without cause, at any time, by vote of the Board of Members. Vacancies may be filled by vote of the Managing Member.

25. **Duties of the Managing Member.** The Managing Member shall be the chief executive officer of the Company and shall be primarily responsible for implementation of the policies of the

Company. He/she shall have general management and direction of the business and operation of the Company and its several divisions. Except as otherwise provided in this Agreement or in the resolutions establishing committees, he/she shall be ex officio a member of all committees of the Members. The Managing Member shall preside over all Company meetings. he/she may sign and execute in the name of the Company deeds, mortgages, bonds, contracts or other instruments except in cases where the signing and execution thereof shall be expressly delegated by the Managing Member or this Agreement to some other officer or agent of the Company, or as otherwise required by law. In addition, he/she shall perform all duties incident to the office of the Managing Member and such other duties as from time to time may be assigned to him by the Managing Member.

26. *Duties of the Vice Managing Member/Chief Operating Officer.* Each Vice Managing Member, if any, shall be the chief operating officer and have such powers and duties as may from time to time be assigned to him by the Managing Member or the Members. Any Vice Managing Member may, when authorized by the Managing Member, sign and execute in the name of the Company, deeds, mortgages, bonds, contracts or other instruments, except for the signing and execution of such documents as shall be expressly delegated by the Board or Managing Member to some other officer or agent of the Company, or as otherwise required by law. If no Secretary or Treasurer is elected or appointed, the Vice Managing Member shall assume the duties of the Secretary and the Treasurer as defined herein.

27. *Duties of the Treasurer.* The Treasurer, if any, shall have charge of and be responsible for all funds, securities, receipts and disbursements of the Company, and shall deposit all monies and securities of the Company in such banks and depositories as shall be designated by the Managing Member. he/she shall be responsible (a) for maintaining adequate financial accounts and records in accordance with generally accepted accounting practices; (b) for the preparation of appropriate operating budgets and financial statements; (c) for the preparation and filing of all tax returns which are required by law; (d) for the performance of all duties incident to the office of Treasurer and such other duties as from time to time may be assigned to him by the Managing Member. The Treasurer may sign and execute in the name of the Company deeds, mortgages, bonds, contracts or other instruments, except in cases where the signing and execution thereof shall be expressly delegated by the Managing Member or by this Agreement to some other officer or agent of the Company or as otherwise required by law.

28. *Duties of the Secretary.* The Secretary, if any, shall act as secretary of all meetings of the Members of the Company. When requested he/she shall also serve as secretary of the meetings of the Committees of the Board. He/she shall keep and preserve the minutes of all such meetings in permanent books. he/she shall see that all notices that are required to be given by the Company are duly given and served; shall have custody of all deeds, leases, contracts and other important Company documents; shall have charge of the books, records, and papers of the Company relating to its organization and management as a limited liability company; shall see that all reports, statements and other documents required by law (except tax returns) are properly filed; shall maintain a record of the names and addresses of the Members of the Company and their Successors in Interest in the membership transfer book of the Company; and shall in general perform all the duties incident to the office of Secretary and such other duties as from time to time may be assigned to him by the Managing Member.

29. *Compensation of Officers.* The Managing Member shall have the authority to fix the compensation of all officers of the Company.

30. *Limitation of Liability of Members.* The Members hereby acknowledge and agree that the liability of the Members (including the Officers among them) to the Company or to any of the other Members shall be limited to the maximum extent permissible under law.

31. **Indemnification.** The Company shall indemnify any Person who was or is a party to any proceeding, including a proceeding brought by a Member in the right of the Company or brought by or on behalf of the Members of the Company, by reason of the fact that such Person is or was a Member (or officer) of the Company, or is or was serving at the request of the Company as a Member, director, trustee, partner or officer of another limited liability company, corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, against any liability and reasonable expenses (including reasonable attorneys' fees) incurred by such Person in connection with such proceeding unless he/she has engaged in willful misconduct or a knowing violation of the criminal or securities laws.

32. **Admission, Withdrawal and Expulsion of Members.** A Member may sell, hypothecate, pledge, assign or otherwise transfer, his/her interest in the Company to another person or entity or back to the Company; provided that a majority of the Members, other than the Member proposing to dispose of such Member's interest, approve of the proposed transfer or assignment. The transferee shall be entitled to receive only the share of profits or other compensation by way of income and the return of contributions to which the Withdrawing Member otherwise would be entitled. The Assignee or Substitute Member shall have all the rights and powers and is subject to all of the restrictions and liabilities of the Member who initially assigned the Membership Interest. Additionally:

   a. All costs and expenses incurred by the Company in connection with the assignment of a Member's interest, including any filing fees and publishing costs and the fees and disbursements of counsel, shall be paid by the assigning Member.

   b. The Members may admit additional Members and determine the Capital Contributions of such Members, so long as a Majority of the Members with Participation Units consent in writing to the addition of such new Member.

   c. Each person who becomes a Member in the Company, shall and does hereby ratify and agree to be bound by the terms and conditions of this Agreement.

   d. A Member may be expelled from the Company for any reason the Managing Member deems appropriate. A Member may be expelled by the Managing Member by no less than two thirds vote of all Participation Units. An expelled Member shall be compensated the fair market value of his/her ownership interest in the Company (less all costs and expenses incurred by the Company in connection with the sale, assignment or transfer of the expelled member's interests) as soon as the Company is financially able to do so but no later than 180 days following such expulsion. The Fair Market Value of the expelled Member's interest shall be determined by a duly qualified professional selected by the Managing Member in his sole discretion.

33. **Quorum at Membership Meetings.** Except as otherwise provided by law, the Articles of Organization or this Agreement, the holders of a majority of the ownership interests (Units) issued and outstanding and entitled to vote thereafter present in person or represented by proxy, shall constitute a quorum at all meetings of the Members for the transaction of business. If, however, such quorum shall not be present or represented at any meeting of the Members, the Members entitled to vote present in person or represented by proxy, shall have the power to adjourn the meeting, until a quorum shall be present or represented. Such adjourned meeting at which a quorum shall be present or represented, shall constitute the meeting as originally notified. When a quorum is present at any meeting, the vote of the holders of a majority of the interests having voting power present in person or represented by proxy shall decide any question brought before such meeting, unless the question is one upon which by express provision of the Act, law, the Articles of Organization or this Agreement, a different vote is required in which case such express provision shall govern and control the decision of such question. Unless stated

otherwise by law, the Articles of Organization, or this Agreement, each Member shall be entitled to one vote weighted in proportion to the Member's respective ownership interest in the Company.

34. <u>Dissolution or Winding Up of the Company</u>  The Company shall be terminated if 52% of the Members with Participation Units consent in writing that the Company should be terminated and dissolved; or upon the termination and dissolution of the Company, a person shall be elected to perform such liquidation by the written consent of the owners of a majority in interest of the Members. Such person shall apply and distribute the proceeds of such liquidation as follows:

   a. If any assets of the Company are to be distributed in kind, such assets shall be distributed on the basis of the fair market value thereof, which shall be determined by an independent appraiser to be selected by the Company's independent public accountants. The amount by which the fair market value of any Property to be distributed in kind to the Members exceeds or is less than the basis of such Property, shall, to the extent not otherwise recognized by the Company, be taken into account in computing Net Profits or Net Losses and shall be allocated among the Members for purposes of crediting or charging the Capital Accounts of, and liquidating distributions to, the Members.

   b. All distributions upon liquidation of the Company shall first be distributed to creditors, including Members who are creditors, to the extent permitted by law in satisfaction of liabilities of the Company, whether by payment or establishment of reserves; then to each Member, in proportion to the amounts of their respective positive Capital Accounts, as such accounts have been adjusted in accordance with this Agreement to reflect the Net Profit or Net Loss realized or incurred upon the sale of the Company's property or assets and to reflect all Net Profits or Net Losses with respect to the year of liquidation. No Member shall be liable to repay the negative amount of his/her Capital Account.

   c. Each of the Members shall be furnished with a statement, reviewed by the Company's independent public accountants, which shall set forth the assets and liabilities of the Company as of the date of the Company's liquidation. Upon completion of the liquidation, the Company shall execute and cause to be filed Articles of Dissolution of the Company and any and all other documents necessary with respect to termination of the Company with the Virginia and the United States.

   d. The Company may revoke its dissolution at any time prior to the expiration of 120 days following the effective date of the Articles of Dissolution. Revocation of dissolution shall be authorized when 52% of all Members with Participation Units consent in writing to such action being taken by the Company. Such revocation of dissolution becomes effective as of the date of the Company's dissolution being revoked and the Company shall resume carrying on its business as if dissolution never occurred.

35. <u>Actions Requiring Consent of 52% of the Participation Units.</u>  Amendment of the Articles of Organization, Company loans, termination or dissolution of the Company, purchases or other Company obligations in excess of $5,000.00 and removal of officers and Members shall require approval of 52% of the Units entitled to vote on such issues.

36. <u>Injunctive Relief.</u>  Any party may apply to the Virginia Courts for injunctive relief and other interim measures to prevent or stop irreparable harm to such party's rights or property during the pendency of any legal proceeding.

37. <u>Governing Law, Construction, Severability, Successors, Entire Agreement.</u>  This Agreement and the rights and liabilities of the parties shall be determined in accordance with the laws of the Virginia. Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

Every provision of this Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder of the terms or provisions within this Agreement. Subject to the limits on transferability contained herein, each and all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the successors, heirs, and assigns of the respective parties, including but not limited to all Successors in Interest who became substituted Members. This Agreement embodies the entire agreement and understanding between the Members with respect to the subject matter hereof, and supersedes all prior agreements and understandings between such Members relating to the subject matter hereof. No amendment, modification, termination or waiver of any provision of this Agreement shall be effected unless the same shall be set forth in writing signed by each member of the Managing Member.

38. <u>Attorney's Fees</u>. Any party seeking to enforce his/her or its rights hereunder shall be entitled, if successful, to recover reasonable attorney's fees and expenses incurred in such enforcement against any party or parties who shall have necessitated such enforcement because (a) such party or parties have breached, or attempted to breach, any obligations owing to the enforcing party under the provisions of this Agreement or (b) such party or parties have initiated or joined any claim, demand, arbitration or action against the enforcing party in contravention of, or inconsistent with, the provisions of this Agreement.

39. <u>Addresses, Notices</u>. Each Member shall keep the Company informed of his/her or its current address. The Members shall have the addresses furnished by the Members on file at the Company office. Any notice permitted or required hereunder shall be in writing and shall be deemed given when hand delivered or sent by registered or certified mail to the intended recipient at his/her last known address. Notice sent to a Member's address as maintained in the Company's records shall be effective with respect to such Member and/or any Successor in Interest of such Member.

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the day and year first above written.

**MEMBER:**

_/s/ Jerome Johnson_
Jerome Johnson
15338 Clovel Tanill Ct
Address
Woodbridge, VA 22193
City/State/Zip Code

▮▮▮▮▮▮▮▮▮▮▮
Social Security Number

**MEMBER:**

*[signature]*
Michelle Johnson
15338 Colonel Tansill Ct.
Address
Woodbridge, VA 22193
City/State/Zip Code
████████████████
Social Security Number

**MEMBER:**

*Gabrielle Johnson [signature]*
Gabrielle Johnson
15338 Colonel Tansill Ct
Address
Woodbridge VA 22193
City/State/Zip Code
████████████████
Social Security Number

**MEMBER:**

*[signature]*
Emeri Johnson
15338 Colonel Tansill Ct.
Address
Woodbridge, VA, 22193
City/State/Zip Code
████████████████
Social Security Number

# EXHIBIT A

| No. | MEMBER | Economic Units | Participation Units | Basis | Percentage Participation Interest | Percentage Economic Interest | Initial Capital Contribution (in cash, property, services) | Member's Signature |
|---|---|---|---|---|---|---|---|---|
| 1. | Jerome Johnson | 52,000 | 52,000 | $52,000.00 | 52.00% | 52.00% | $50,000.00 | |
| 2. | Michelle Johnson | 24,000 | 24,000 | $24,000.00 | 24.00% | 24.00% | $24,000.00 | |
| 3. | Gabrielle Johnson | 12,000 | 12,000 | $12,000.00 | 12.00% | 12.00% | $12,000.00 | |
| 4. | Emeri Johnson | 12,000 | 12,000 | $12,000.00 | 12.00% | 12.00% | $12,000.00 | |
| 5. | | | | | | | | |
| 6. | | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| | Unallocated | 0,000 | 0.00 | $00.00 | 0.00% | 0.00% | $00.00 | |
| | TOTAL | 100,000 | 100,000 | $100,000.00 | 100.00% | 100.00% | $500,000.00 | |