**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JEROME ALAN JOHNSON and | ) | Case No. 19-12437-BFK |
| MICHELE ANITA JOHNSON, | ) | Chapter 7 |
| | ) | |
| Debtor(s). | ) | |
| | ) | |
| DONALD F. KING, | ) | |
| as Chapter 7 Trustee, | ) | Adversary Proceeding |
| | ) | No. 21-01046-BFK |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MARY ELLA JOHNSON, | ) | |
| EMERI M. JOHNSON, | ) | |
| GABRIELLE A. JOHNSON, and | ) | |
| LEGACY WEALTH PROPERTIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

This matter comes before the Court on the Motion of Defendants, Emeri M. Johnson, Gabrielle A. Johnson, and Legacy Wealth Properties, LLC ("the Defendants," with Legacy Wealth Properties, LLC, being referred to as "the LLC," or "Legacy"), to dismiss the Plaintiff's Complaint pursuant to Bankruptcy Rule 7012 (incorporating Federal Rule of Civil Procedure 12(b)(6)). Docket No. 11. The Plaintiff filed an Opposition to the Motion. Docket No. 16. The Defendants filed a Reply Memorandum. Docket No. 17. The Court heard the parties' arguments on October

1

26, 2021. For the reasons stated below, the Court will grant the Motion in part and will deny it in part.[1]

## Facts as Pled in the Complaint

The Plaintiff has pled the following facts in the Complaint:

1. Legacy is a Virginia limited liability company. It owns (or owned, as discussed below) real property located at 8815 Colemans Lake Road, Ford, Virginia, 23850 ("the Property"). Compl. ¶ 2 (Docket No. 1).

2. The Debtors, Jerome Alan Johnson and Michele Anita Johnson, are or were members of the LLC, with 52% and 24% membership interests, respectively. Defs.' Mot. to Dismiss, Ex. A, at 11 (Docket No. 11).[2]

3. Gabrielle Johnson and Emeri Johnson own or owned the other 24% membership interests, with 12% each. Defs.' Mot. to Dismiss, Ex. A, at 11 (Docket No. 11). Gabrielle Johnson and Emeri Johnson are the Debtors' daughters and allegedly live at the Property. Compl. ¶¶ 4, 5 (Docket No. 1).

4. In October 2016, the four Members executed a Consent to Action ("the Consent") in which they agreed to transfer "100% (one hundred percent) of the property" to Mary Ella Johnson. Compl. ¶¶ 14-16 (Docket No. 1).

5. The LLC did not transfer the Property at that time and continued to own the real property up until the Petition Date in this case. Compl. ¶ 17 (Docket No. 1).

---

[1] A fourth Defendant, Mary Ella Johnson, is alleged to reside in the Property at issue in this case. Compl. ¶ 3 (Docket No. 1). She has not yet responded to the Complaint. Ms. Johnson is Jerome Alan Johnson's mother. Tr.'s Opp'n, at 2-3 (Docket No. 16).

[2] The Defendants attached a copy of the Operating Agreement to their Motion to Dismiss. Defs.' Mot. to Dismiss, Ex. A (Docket No. 11). The Trustee does not dispute the authenticity of the Operating Agreement and incorporates portions of it in his Opposition to the Motion to Dismiss. The parties agree that the Operating Agreement does not displace the relevant provisions of the Virginia Limited Liability Company Act.

6.	Jerome Alan Johnson and Michele Anita Johnson filed a Voluntary Petition under Chapter 7 with this Court on July 25, 2019. Case No. 19-12437-BFK, Docket No. 1. The Plaintiff, Donald F. King, is the Chapter 7 Trustee in their case.

7.	More recently, in July 2021, Legacy, acting by Jerome Alan Johnson as Managing Member, transferred title to the Property to Mary E. Johnson, by a Deed of Gift and a Correction Deed of Gift. Tr.'s Exs. A, B (Docket No. 20).

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the District Court for this District on August 15, 1984. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) (matters concerning the administration of the estate), (H) (proceedings to determine, avoid, or recover fraudulent conveyances) and (M) (orders approving the use or lease of property).

Under the Supreme Court's decisions in *Twombly* and *Iqbal*, to survive a motion to dismiss under Rule 12(b)(6), the complaint must state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court added: "[W]hether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While Bankruptcy Rule 7008 (incorporating Federal Rule of Civil Procedure 8) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it is also clear that "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Under Rule 7012(b), the Court is required to accept as true all well-pleaded facts in the Complaint, but is not required to accept allegations that are legal conclusions. Fed. R. Bankr. P. 7012(b) (incorporating Fed. R. Civ. P. 12(b)(6)); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) ("[A]lthough a court must accept as true all factual allegations contained in a complaint, such deference is not accorded to legal conclusions stated therein. The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6).") (citations omitted).

The Court will address each of the Counts in the Complaint, as well as the Trustee's request for leave to amend, below.

### I.  The Fraudulent Transfer and Voluntary Conveyance Counts (Counts IV, V, VI, and VII).

The Trustee's Fraudulent Transfer and Voluntary Conveyance Counts (Counts IV, V, VI, and VII) allege that both the transfer of the Property and the Consent itself were fraudulent transfers or voluntary conveyances under the Bankruptcy Code or under State law. *See* Compl. ¶¶ 52 ("The Debtors' purported relinquishment of 'any and all rights' to the Colemans Lake Property in favor of Mary Ella Johnson was a transfer of the Debtors' interest in property"), 54 ("The Debtors' execution of the Consent and any signing over of the Colemans Lake Property was also a transfer of the Debtors' interest in property."), 65 ("The transfers described in Paragraph 52 and Paragraph 54 were conveyances which were not upon consideration[.]"), 72 ("The transfer of the Debtors' interest in the Colemans Lake Property and/or Legacy Wealth Properties, LLC . . . were made with actual intent to hinder, delay, or defraud creditors[.]"). The Court will address the two transfers separately.

*A. The Real Property.*

When a bankruptcy case is filed an estate is created which includes "all legal or equitable interests of the debtor in property," "wherever located and by whomever held[.]" 11 U.S.C. § 541(a). The Court looks to applicable non-bankruptcy law, here that of Virginia, to determine the ownership interests of the parties in property. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law[, u]nless some federal interest requires a different result[.]").

In Virginia, as elsewhere, property may be held by a limited liability company and "title to any estate or interest so acquired vests in the limited liability company." Va. Code Ann. § 13.1-1021 (1991). A membership interest in a limited liability company is considered personal property. Va. Code Ann. § 13.1-1038 (2006).

The Trustee alleges that the Debtors owned membership interests in Legacy, and that Legacy owned the Property. Compl. ¶¶ 9-12 (Docket No. 1). The Trustee cannot bring an action to avoid a transfer of the Property because the Property was never owned individually by the Debtors. 11 U.S.C. § 548(a)(1) (trustee may avoid "any transfer . . . of an interest *of the debtor* in property") (emphasis added). The Court, therefore, will grant the Motion to Dismiss insofar as Counts IV, V, VI, and VII seek to avoid the transfer of the Property.

*B. The Consent.*

Counts IV, V, VI, and VII also seek to avoid the Consent, which appears to have had the effect of transferring the Debtors' membership interests, as a fraudulent transfer or a voluntary conveyance.

The Consent had certain badges of fraud associated with it – notably, a transfer to a family member, for no consideration, at a time when the Debtors were experiencing financial difficulties.

5

The Consent itself references "financial hardships and the inability to pay Mary Ella Johnson for the property." Compl. ¶ 16 (Docket No. 1). *See McCarthy v. Giron*, No. 1:13-CV-01559-GBL-TCB, 2014 WL 2696660, at *11–12 (E.D. Va. 2014) (assessing a fraudulent transfer under 11 U.S.C. § 544(b) and Va. Code Ann. § 55.1-400 (2019)); *Riggs Nat'l Bank v. Andrews* (*In re Andrews*), 186 B.R. 219, 222 (Bankr. E.D. Va. 1995) (noting that the badges of fraud include "(1) A relationship between the debtor and the transferee; (2) Lack of consideration for the conveyance; (3) Debtor's insolvency or indebtedness; (4) Transfer of debtor's entire estate; (5) Reservation of benefits, control, or dominion by the debtor; (6) Secrecy or concealment of the transaction; and (7) Pendency or threat of litigation at the time of transfer.").

The Consent comes within the Bankruptcy Code's definition of a "transfer." The Code defines a "transfer" as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with: (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). Here, the Consent was for the stated purpose of "sign[ing the Property] back over to Mary Ella Johnson." Compl. ¶ 16 (Docket No. 1). The Consent further stated that "[a]ll four Members relinquish any and all rights to said property to Mary Ella Johnson." Compl. ¶ 16 (Docket No. 1).

The Plaintiff has stated a plausible claim for relief under the Bankruptcy Code and State law with respect to the Consent. The Court, therefore, will deny the Motion to Dismiss Counts IV, V, VI, and VII insofar as those Counts allege that the Consent was a fraudulent transfer or a voluntary conveyance.[3]

---

[3] On Counts VI and VII, under Bankruptcy Code Sections 548(a)(1)(A), 548(a)(1)(B) and 550, the Consent appears to have been executed outside of the two-year lookback period under Section 548. The Defendants did not raise this issue, and the Court declines to address it *sua sponte*.

## II. The Section 544(a)(3) and 550(a) Count (Count II).

In Count II, the Trustee asserts that the transfer of the Property is voidable pursuant to 11 U.S.C. § 544(a)(3). Section 544(a)(3) puts the Trustee in the position of a hypothetical bona fide purchaser for value of real property owned by the Debtor at the time of the bankruptcy filing. *Id.* Section 544(a)(3) puts the Trustee in a superior position as against unrecorded liens and equitable interests in real property. *Wells Fargo Funding v. Gold (In re Taneja),* 432 B.R. 216, 220-21 (E.D. Va. 2009). Bankruptcy Code Section 550(a) allows the Trustee to recover avoided transfers or the value thereof. 11 U.S.C. § 550(a).

In this case, the Property was not property of the bankruptcy estate, for the reasons stated above. Section 544(a)(3) applies only to interests in real property and not to interests in personal property. The Court, therefore, will grant the Motion to Dismiss Count II.

## III. The Sale of Co-Owner Interest (Section 363(h)) (Count I).

Count I seeks to compel a sale of the Property pursuant to Bankruptcy Code Section 363(h). Section 363(h) permits the Trustee to sell property that is co-owned by the debtor and third parties, if certain conditions are met. 11 U.S.C. § 363(h). Section 363(h), however, is limited to property "in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety[.]" *Id.* Again, the Debtors did not have a direct interest in the Property in this case, whether as tenants in common, joint tenants, or tenants by the entirety. They had membership interests in Legacy, which were owned by them individually and not jointly with any of the other members. Section 363(h) does not permit a sale under these circumstances.

The Court, therefore, will grant the Motion to Dismiss Count I.

## IV. The Count for Dissolution (Count III).

Count III seeks a dissolution of the LLC, and a sale of its Property. Under Virginia law, "[o]n application by or for a member," the circuit court may order a dissolution of a limited liability company "if it is not reasonably practicable to carry on the business in conformity with the articles of organization and any operating agreement." Va. Code Ann. § 13.1-1047 (2008).

Also, under Virginia law, members of a limited liability company are dissociated upon the filing of a bankruptcy petition. Va. Code Ann. § 13.1-1040.1(6)(a) (2009). Upon dissociation, a member has only the rights of an assignee. Va. Code Ann. § 13.1-1040.2(A) (2006). An assignee has the right to receive a share of the profits, losses, and distributions to which the member would be entitled, but the assignee is precluded from participating in the management or affairs of the LLC, "or to become or to exercise any rights of a member." Va. Code Ann. §13.1-1039(A) (2013). The Defendants argue that, together, these provisions prevent the Trustee from seeking a judicial dissolution of the LLC.[4] The Trustee responds by arguing that § 13.1-1040.1(6)(a), causing the dissociation of a member upon the filing of a bankruptcy, impermissibly conflicts with Bankruptcy Code Section 541(c)(1), which provides in relevant part:

> [A]n interest of the debtor in property becomes property of the estate . . . notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
> (A) that restricts or conditions transfer of such interest by the debtor; or
>
> (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an

---

[4] There is support in non-bankruptcy case law for the proposition that a dissociated member or an assignee lacks standing to bring an action for dissolution or other forms of relief. *See Benjamin v. Bierman*, 943 N.W.2d 283 (Neb. 2020); *Styslinger v. Brewster Park, LLC,* 138 A.3d 257 (Conn. 2016); *Nw. Wholesale, Inc. v. PAC Organic Fruit, LLC,* 357 P.3d 650 (Wash. 2015). *But see In re Carlisle Etcetera LLC,* 114 A.3d 592 (Del. Ch. 2015) (assignee had equitable standing to seek dissolution).

> option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1). The Trustee argues that Va. Code Ann. § 13.1-1040.1(6)(a) (2009) is an "applicable nonbankruptcy law" provision that, upon the filing of a bankruptcy petition, effects a "forfeiture, modification, or termination of the debtor's interest in property" (generally known as an *ipso facto* clause). This issue is one on which bankruptcy courts disagree, even in Virginia.

The two conflicting cases in Virginia are *In re Garrison-Ashburn, L.C.*, 253 B.R. 700 (Bankr. E.D. Va. 2000), and *In re Virginia Broadband, LLC*, 498 B.R. 90 (Bankr. W.D. Va. 2013). In *Garrison-Ashburn*, one of the members of a debtor limited liability company moved for reconsideration of an order authorizing the sale of the debtor's real estate. *See* 253 B.R. at 701. The movant, Stephen H. Chapman, held a 50% interest in the debtor along with Cralle Z. Comer, who owned the other 50% membership interest. *See id.* at 702. Both members also owned 50% membership interests in a related entity, Garrison-Woods, LLC. *See id.* Mr. Chapman filed a voluntary petition under Chapter 11, which was still pending at the time of the order authorizing the sale and when he moved for reconsideration of the sale order. *See id.* Chapman proffered certain new evidence in support of his motion, but Judge Mayer rejected this attempt, holding that "even if the newly proffered evidence were considered, the court is satisfied that Comer can bind Garrison-Woods, and consummate the contract without Chapman's consent or participation." *Id.* at 703. Specifically, Judge Mayer held that "Chapman fail[ed] to consider the effect of the filing of his voluntary petition in bankruptcy on his rights in the limited liability company." *Id.* at 704. Judge Mayer further noted, "when Chapman filed his voluntary petition, he ceased to be a member and had no further voice or vote in the management of Garrison-Woods." *Id.*[5]

---

[5] Judge Mayer's use of the term "ceased to be a member" was a shorthand way of saying that Chapman had been dissociated as a member of the LLC and retained only the rights of an assignee.

Chapman argued that, notwithstanding his dissociation as a member under State law, Bankruptcy Code Section 541(c)(1) allowed him to participate in the affairs of both LLCs. Judge Mayer rejected this argument, holding:

> Here the estate received the entire interest of the debtor in Garrison-Woods including its burdens and restrictions. The economic interest, that is the membership interest, remains in the estate and is available for the benefit of creditors. The enforcement of Chapman's statutory dissociation does not cause a forfeiture of those rights or impair the legal capacity of the company to continue in business.

253 B.R. at 709. Under *Garrison-Ashburn*, therefore, the debtor, and by extension the Trustee, retains only the rights of an assignee.

Judge Connelly issued her opinion in *Virginia Broadband* thirteen years later. In *Virginia Broadband*, the Creditors Committee moved to dismiss a Chapter 11 case on the ground that a majority of the debtor's board did not authorize the filing. *See* 498 B.R. at 91. One of the members (coincidentally, another Chapman, Hunter Chapman, III) had filed a voluntary petition under Chapter 13. *See id.* at 92. The Consent authorizing the filing was executed while Mr. Chapman's bankruptcy case was pending, but his case was dismissed a few days later and the members executed a second Consent, ratifying the prior Consent. *See id.* at 92-93. Much of the Court's opinion in *Virginia Broadband* has to do with the re-vesting of the debtor's rights under Bankruptcy Code Section 349, when Mr. Chapman's personal bankruptcy case was dismissed. Judge Connelly went on to hold, however:

> Pursuant to section 541(c)(1), Mr. Chapman's economic and non-economic interests in VABB were not forfeited, modified, or terminated merely because he filed bankruptcy, but rather became property of his estate. . . . This Court holds that Va. Code. Ann. § 13.1-1040.1(6)(a) is an *ipso facto* provision under section 541(c)(1)(B), and that Mr. Chapman's economic and non-economic interests in VABB became property of his bankruptcy estate.

10

*Id.* at 95-97. Two other bankruptcy courts have agreed with Judge Connelly's opinion in *Virginia Broadband*. *See In re Talbut*, Case No. 08-34763, 2015 WL 5145598, at *3 (Bankr. N.D. Ohio Aug. 28, 2015); *Walro v. The Lee Grp. Holding Co.* (*In re Lee*), 524 B.R. 798, 803-04 (Bankr. S.D. Ind. 2014).[6]

*Garrison-Ashburn* and *Virginia Broadband* appear to be, and are in fact, fundamentally irreconcilable on the issue of whether § 13.1-1040.1(6)(a) is an impermissible *ipso facto* provision. On the one hand, one can argue as the Defendants do here, that members in a closely held limited liability company should not be forced to accept strangers, such as a Chapter 7 Trustee or a Trustee appointed in a Chapter 11 case, in managing the affairs of a limited liability company. This is what § 13.1-1040.1(6)(a) accomplishes, by preventing assignees (including dissociated members) from exercising a role in the management of the LLC.

Section 541(c)(1), on the other hand, does not distinguish between economic and non-economic interests. It simply uses the term "an interest of the debtor in property." 11 U.S.C. § 541(c)(1). The ability to bring an action for dissolution or a derivative action has been described as a non-economic right, that is, a right other than the right to receive distributions and profits. *See, e.g.*, *Klingerman*, 388 B.R. at 678-79. Congress could have said "any economic interest of the debtor in property" in § 541(c)(1), but it chose the broader language of "an interest of the debtor in property." Barring the debtor from bringing an action for dissolution, or a derivative action, effects a "forfeiture, modification, or termination" of those non-economic rights, by virtue of the debtor having filed for bankruptcy.

---

[6] Two decisions preceding *Virginia Broadband* came to similar conclusions. *See Sheehan v. Warner* (*In re Warner*), 480 B.R. 641, 653 (Bankr. N.D.W. Va. 2012); *Klingerman v. ExecuCorp LLC* (*In re Klingerman*), 388 B.R. 677, 678-79 (Bankr. E.D.N.C. 2008).

The distinction between economic rights and non-economic rights may be more nuanced in the bankruptcy context. In *Bank of Am. Nat'l Tr. and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999), the Supreme Court confronted the issue of whether, in the context of the absolute priority rule and the new value exception, equity holders were said to be retaining their interests in the debtor "on account of" their prior interests. *Id.* at 437. There, the Court noted that an old equity holder's exclusive opportunity to propose a plan "should . . . be treated as an item of property in its own right." *Id.* at 455. The Court reasoned that "the exclusiveness of the opportunity, with its protection against the market's scrutiny of the purchase price by means of competing bids or even competing plan proposals, renders the partners' right a property interest extended 'on account of' the old equity position[.]" *Id.* at 456. Of course, there is a difference between a dissociated member's right to bring a dissolution action or a derivative action and a partner's or a shareholder's exclusive right to purchase equity interests in the debtor out of a bankruptcy case. In *203 N. LaSalle*, however, the Court treated non-economic rights as valuable rights under the Code, and § 541(c)(1) does not appear, either textually or by context, to limit bankruptcy estates' rights to just economic rights.

The Defendants in this case argue that *Butner* directs this Court to look solely to State law to resolve the issue of what is, and what is not, property of the bankruptcy estate. The Supreme Court in *Butner* was clear, however, that courts must look to State law to determine property of the estate "[u]nless some federal interest requires a different result." *Butner*, 440 U.S. at 55. Here, there is a federal bankruptcy interest expressed in § 541(c)(1), which takes priority by virtue of the Supremacy Clause. *See* U.S. Const. art. VI, cl. 2.

Congress's choice to include (or not to exclude) non-economic rights makes a great deal of sense in the context of this case. Here, the Trustee alleges that the Debtors transferred valuable

12

interests in Legacy to a family member for no consideration, at a time when the Debtors were in financial distress. The Defendants' response has been to argue that the Trustee cannot pursue claims to avoid the alleged transfer of the Property (which is accurate, *see* Parts I, II, and III, above), *and* that the Trustee, standing in the shoes of a dissociated member, has no right to pursue a dissolution of the company. This strikes the Court as too much—the Trustee is not without rights here, economic and non-economic.

The Court, therefore, will deny the Motion to Dismiss Count III.

### V.    The Trustee's Request for Leave to Amend.

Finally, the Trustee requests leave to amend the Complaint, should the Court grant the Defendants' Motion to Dismiss. Tr.'s Opp'n, at 2-3 (Docket No. 16). Leave to amend is to be liberally granted and should only be denied where an amended pleading fails to state a claim and an amendment would be futile or there are other compelling reasons to deny an amendment. *See* Fed. R. Bankr. P. 7015 (incorporating Fed. R. Civ. P. 15); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be granted unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

At this stage of the case, the Court will require the Trustee to file a Motion for leave to amend the Complaint, along with a proposed Amended Complaint, so that the Court and the Defendants can determine whether the proposed amendment is futile. The proposed Amended Complaint may also assert the bankruptcy estate's rights, if any, arising out of the recent, post-petition, transfer of the Property. Tr.'s Exs. A, B (Docket No. 20).

13

The Court, therefore, will deny the Trustee's request for leave to amend, without prejudice to the filing of a Motion for leave to amend along with a proposed Amended Complaint.

### Conclusion

It is therefore **ORDERED**:

A. The Defendants' Motion to Dismiss Count I is granted.

B. The Defendants' Motion to Dismiss Count II is granted.

C. The Defendants' Motion to Dismiss Count III is denied.

D. The Defendants' Motion to Dismiss Counts IV, V, VI, and VII is granted in part. Counts IV, V, VI, and VII are dismissed insofar as they allege a fraudulent transfer or a voluntary conveyance of the Property.

E. The Defendants' Motion to Dismiss Counts IV, V, VI, and VII is denied in part. Counts IV, V, VI, and VII are not dismissed insofar as they allege a fraudulent transfer or voluntary conveyance arising out of the transfer of the Debtors' membership interests in Legacy by virtue of the Consent.

F. The Plaintiff's request for leave to amend the Complaint is denied without prejudice to the filing of a Motion for leave to amend along with a proposed Amended Complaint.

G. The Clerk will mail copies of this Order, or will provide cm-ecf notice of its entry, below.

Date: Nov 19 2021

Alexandria, Virginia

/s/ Brian F Kenney

The Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: Nov 22 2021

Copies to:

Donald F. King, Esquire
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
*Plaintiff-Chapter 7 Trustee*

Bradley D. Jones, Esquire
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
*Counsel for Plaintiff*

Mary Ella Johnson
8815 Colemans Lake Rd.
Ford, VA 23850
*Pro Se Defendant*

Emeri M. Johnson
15338 Colonel Tansill Ct.
Woodbridge, VA 22193
*Defendant*

Gabrielle A. Johnson
15338 Colonel Tansill Ct.
Woodbridge, VA 22193
*Defendant*

Legacy Wealth Properties, LLC
15338 Colonel Tansill Ct.
Woodbridge, VA 22193
*Defendant*

Craig M. Palik, Esquire
6411 Ivy Lane, Suite 200
Greenbelt, MD 20770
*Counsel for Defendants*

Thuc-Doan Tran Phan, Esquire
6411 Ivy Lane, Suite 200
Greenbelt, MD 20770
*Counsel for Defendants*