# EXHIBIT 8

Craig M. Palik, Esquire VSB #45728
Thuc-Doan Phan, Esquire VSB #92462
McNamee Hosea, et al.
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770
(301) 441-2420
cpalik@mhlawyers.com
dphan@mhlawyers.com
*Counsel to Defendants Mary Ella Johnson, Emeri M. Johnson, Gabrielle A. Johnson, and Legacy Wealth Properties, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**JEROME ALAN JOHNSON and MICHELE ANITA JOHNSON,**<br><br>**Debtors.** | **Case No. 19-12437-BFK**<br>**Chapter 7** |
| **DONALD F. KING, TRUSTEE,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**MARY ELLA JOHNSON,** ***et al***<br><br>**Defendants.** | **Adv. Pro. No. 21-01046-BFK** |

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

To: BRADLEY D. JONES
Counsel for Donald F. King Trustee, Plaintiff
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Phone: 703-218-2176
Fax: 703-218-2160
Brad.Jones@ofplaw.com

From: Mary Ella Johnson
c/o Craig M. Palik, Esq.

McNamee Hosea
6411 Ivy Lane, Suite 200
Greenbelt, MD 20770

Pursuant to Federal Rule of Civil Procedure 33 and Federal Rule of Bankruptcy Procedure 7033 and Local Rule 7026-1(B), Mary Ella Johnson (the "Defendant") responds to Plaintiff's Set of Interrogatories (the Discovery Requests and each request therein a "Interrogatory") propounded by Donald F. King, Chapter 7 Trustee ("Plaintiff" or "Trustee") for the bankruptcy estate of Jerome A. Johnson and Michele A. Johnson, Case No. 19-12437-BFK.

**DEFENDANT'S RESPONSE TO INTERROGATORIES**

1. Identify each person who has knowledge or information concerning the subject matter of the Complaint and your Answer to the Complaint, and state generally the knowledge possessed or believed to be possessed by each such person.

**Response:**

a. Jerome Johnson – Mr. Johnson has knowledge concerning the Colemans Lake Property, including any transfers regarding the property, and the status of the Debtor's financial affairs. Mr. Johnson would be knowledgeable as to any debts that Legacy Wealth Properties may have and debts that he and his wife may have had at the time of their bankruptcy filings. Mr. Johnson also did a majority of the planning for the nursing facility and has information on his plans and what steps he took.

b. Michele Anita Johnson – Mrs. Johnson is knowledgeable regarding the same topics that Mr. Johnson is knowledgeable in.

c. Emeri M. Johnson – As a member of Legacy Wealth Properties, LLC, Ms. Emeri Johnson can attest to decisions made among the members with regards to the Colemans Lake Property.

d. Gabrielle A. Johnson – As a member of Legacy Wealth Properties, LLC, Ms. Gabrielle A. Johnson can attest to decisions made among the members with regards to the Colemans Lake Property.

e. Mary Ella Johnson – Ms. Mary Ella Johnson's knowledge concerning the subject matter of the Complaint is minimal compared to that of the Debtors'. However, Ms. Mary Ella Johnson can attest to reasoning behind earlier transfers of the Colemans Lake Property. Further, Ms. Johnson can speak to facts that support the Defendants' constructive trust defense, including ownership, upkeep, and intention of transfers.

2. Identify each person you intend to call as a witness by affidavit on summary judgment or at trial in this case and summarize his or her anticipated testimony.

**Response:**

a. Jerome Johnson – Mr. Johnson will attest that the gift deed signed on July 28, 2021 was not an attempt to delay, defraud, or hinder creditors. Mr. Johnson's understanding was that the transfer of the Colemans Lake Property to Mary Ella Johnson was effectuated in 2016 when the Consent to Action by Members Without a Meeting (the "Consent") was executed. In learning that the Consent was not enough to effectuate a transfer, Mr. Johnson believe the gift deed signed on July 28, 2021 would finalize the transfer contemplated by the Consent. Mr. Johnson would not have signed the gift deed if he knew that it was not allowed. Mr. Johnson will also testify that the Colemans Lake Property was originally transferred to Legacy Wealth Properties, LLC for the sole purpose of ease in building an assisted living facility on the property. Mr. Johnson will testify as to the understanding that the property still belonged to his mother, and that finding that he was unable to financially support the construction of the assisted living facility, decided to return the property back to his mother.

b. Mary Ella Johnson – Ms. Johnson will attest that the property was purchased by her and husband. Ms. Johnson will also speak to the renovations and changes that she made to the property, and continues to make to the property, as well as to the money she spent herself to maintain and upkeep the property. Ms. Johnson will also attest to the money that is spent in managing the property taxes and other charges to the Colemans Lake Property. Ms. Johnson will also attest to the fact that although the Colemans Lake Property was transferred to Legacy Wealth Property, LLC, it was done solely to facilitate the building of the assisted living facility. Ms. Johnson and her children understood that the property still belonged to her.

3. Please provide current contact information for Ramona Johnson-Howard, including her home address, place of employment or other place whether Ramona Johnson-Howard regularly conducts a business or profession, email address, and phone number.

**Response:** Ramona Johnson-Howard is retired, so she does not have a place of employment. Prior to her retirement, she worked as a nurse practitioner for the VA.

Ms. Johnson-Howard's email address: monajh1@verizon.net
Ms. Johnson-Howard's phone number: 804-338-4818

4. Please state all material facts that support your affirmative defenses regarding the equitable doctrine of constructive trust.

**Response:** The Colemans Lake Property was transferred by a Deed of Bargain and Sale from Darcy P. Grigg to Thomas J. Johnson and Mary E. Johnson as tenants by the entirety on January 26, 1972 and recorded in the land records of Dinwiddie County, Virginia, Deed Book 154, Page 87. The Defendant and her husband paid $8,000.00 on the note to Darcy P. Grigg, which is evidenced by a Certificate of Satisfaction filed on August 27, 1980. At the time of the purchase, there was a three room cinderblock house with one bathroom on the property. Thomas Johnson built a fourth room onto the property himself, and was aided by his children. The property has remained in Mary Ella Johnson's ownership since it was purchased and since her husband passed. Ms. Johnson maintains and upkeeps the property, which includes renovations to the building on the property, paying for the grass being cut, and payment of property taxes.

Documents have been submitted pursuant to the Trustee's Request for Documents, some of which shows a history of renovations on the property and the amounts paid by Ms. Johnson for the renovations. There is a document included which shows a list of renovations made by James Ridley to the entirety of the home, including painting, replacing flooring, installing doors and base boards, and renovating entry ways. The document also shows that Ms. Johnson paid a total of $1640 for these renovations herself. The documents submitted also shows an estimate from Jaxon Home Remedies which shows an estimate for repairs to the property totaling $2,065.00 made out to Ms. Johnson as a customer. There is also a real estate tax statement for the property which is addressed to Legacy Wealth Properties LLC with "c/o Mary Ella Johnson" and the receipt of a money order paid by Ms. Johnson.

Further, as seen in the documents submitted to the Trustee in response to his Request for Documents, there are two documents from the Dinwiddie County Planning Commission related to Mary Ella Johnson's request to sell or gift land to herself to hold for her disabled grandson. This request has been approved. Thus, even if the nursing facility was built on the property, it had to be mindful of the fact that 3 acres of land has been set aside for Ms. Johnson's grandson.

The Debtors and Ms. Johnson can both testify to the fact that they have always viewed the property as belonging to Ms. Johnson. The transfer of the property to Legacy Wealth Properties, LLC, as the Debtors can testify to, was for ease in making the changes necessary for the assisted living facility. However, once Jerome Johnson realized that he was unable to financially support building the nursing facility, he attempted to transfer the property back to Ms. Johnson. Ms. Johnson believed that the property was transferred back to her in 2016 and has continued to make payments, renovate, and maintain the property since 2016.

5. Please explain your understanding regarding any attempt to build an assisted living facility on the Colemans Lake Property, including who was going to fund the construction, the nature and extent of the any business plan, how the economics for the project were to be divided, and what consideration if any you were expecting to receive.

**Response:** Debtor Jerome Johnson was more or less "in charge" of planning and building the assisted living facility. During the 2015-2016 period, Mr. Johnson was in the feasibility planning stage, which he describes as the period in which he made determinations as

to cost. Mr. Johnson was planning on how big the size of the facility would be, how to utilize the existing house on the property or whether to gut and demolish the building, and finding contractors who he could work with. Mr. Johnson also had to be conscious of land set aside for his nephew, totaling 3 acres. During this time, Mr. Johnson worked with Ms. Mary Ella Johnson to speak to contractors in the Dinwiddie area of what they could do in terms of building and utilizing the house, as well as pricing to demolish and rebuild the current structure.

Because Mr. Johnson was not an expert in construction, he was essentially building or planning as he went and it took time for him to finalize plans. However, in 2016, Mr. Johnson was unable to financially support the assisted living facility development, and attempted to transfer the property back to Mary Ella Johnson. During the course of the planning of the assisted living facility, Mr. Johnson stated that Ms. Johnson, his mother, always had the final say as to what was happening and how the property was being treated as she still viewed the property as hers.

6. Please explain how business records relating to the Colemans Lake Property and any project related to building an assisted living facility were kept, who the custodian for those records was, what records were kept, and how those records were prepared.

**Response:** Any documentation related to the Colemans Lake Property, such as deeds, financial records, receipts of renovation and upkeeping, were all kept by the Defendant. There were no business records related to the assisted living facility as it was still in early stages of planning. Any records, if there were any, would have been kept by the Debtor Jerome Johnson. He has stated that a majority of his planning was done verbally, either meeting in person with contractor or over the phone.

7. Explain how you and your husband came to own the Colemans Lake Property. To the extent you or your family believed that developing an assisted living facility on the Colemans Lake Property would be a way of preserving you and your husband's legacy, please explain this in detail.

**Response:** The property was purchased and deeded over by Darcy P. Grigg to Defendant and her husband as tenants by the entirety. The Colemans Lake Property has been paid in full since its purchase. The property was originally purchased to farm, and there were farm animals and a garden on the property. There was also a small family grocery store on the property but it was torn down a long time ago.

It was Jerome Johnson's idea to develop the assisted living facility. His sister Ramona is a nurse practitioner with over 35 years of experience and with a specialty in carrying for geriatric patients. Mr. Johnson's other sister is also a nurse, and there are several family members in the healthcare business. An assisted living facility would be a way to utilize a lot of family members' talents and skills, and also be lucrative to the family. The Defendant merely wishes that the

property could be occupied and used instead of sitting empty. Jerome Johnson believed that a assisted living facility would fulfill the Defendant's wish to have the property used, but also to benefit the family.

8. Explain any interest you had in Legacy Wealth Properties, LLC and who you believed was in charge of managing the finances, books and records, and bank accounts of Legacy Wealth Properties, LLC from September 2016 to present; what responsibilities, if any, that person had in these tasks; and what responsibilities, if any, were undertaken by any person.

**Response:** The Defendant did not have any interest in Legacy Wealth Properties, LLC. She associated the entity with Jerome Johnson, and her knowledge of the entity was minimal.

9. Explain why the Colemans Lake Property was transferred or attempted to be transferred pursuant to the gift deed executed on October 6, 2021, what purpose was served by this transfer, and what if any consideration was provided for this transfer. A copy of the October 6, 2021 gift deed is attached as **Exhibit F**.

**Response:** The Defendant did not understand, at the time of the above mentioned transfer, that the Property was subject to the adversary proceeding. She did not understand what the adversary proceeding. The transfer of the Colemans Lake Property pursuant to the gift deed on October 6, 2021 was made for estate planning purposes. The Defendant is elderly, and she believed that Ramona Johnson-Howard, as her daughter who has greatly assisted her, would be able to take care of the property after the Defendant passed. It was for estate planning purposes.

10. Explain why the Colemans Lake Property was transferred or attempted to be transferred pursuant to the gift deed and correction gift deed executed on July 28, 2021, what purpose was served by this transfer, and what if any consideration was provided for this transfer. Copies of the July 28, 2021 gift deed and correction gift deed are attached as **Exhibit E.**

**Response:** The Defendant was unaware that there was any transfer made on July 28, 2021. The Defendant believed and understood that the property had been transferred back to her from Legacy Wealth Properties, LLC in 2016.

11. Explain why the October 29, 2016 Consent to Action By Members Without a Meeting was executed; what purpose was served by this Consent; what financial hardships or

agreements were at issue or led to the Consent; why a deed was not executed at the time of the consent to transfer the Colemans Lake Property; and identify any underlying documents that would support the existence of an agreement or the financial hardships referenced in the Consent. A copy of the Consent to Action is attached as **Exhibit D**.

**Response:** The Defendant was informed by Jerome Johnson that the Colemans Lake Property had been transferred back to her. Jerome Johnson did not inform the Defendant as to why he was transferring the property back or how it was done. The Defendant was unaware of the Debtors' financial hardships until recently, when she was informed and understood what the adversary proceeding was about.

12. Explain why the Colemans Lake Property was transferred pursuant to the gift deed executed on September 12, 2015, what purpose was served by this transfer, and what if any consideration was provided for this transfer. A copy of the September 12, 2015 gift deed is attached as **Exhibit C.**

**Response:** The Colemans Lake Property was transferred on September 12, 2015 so that Jerome Johnson could plan for and build the nursing facility. This was to make it easier for Jerome Johnson to make decisions and speak to contractors about the property. It was intended that the development of the property would be for the benefit of Mary Ella Johnson.

13. Explain why the Colemans Lake Property was transferred pursuant to the gift deed executed on June 25, 2013, what purpose was served by this transfer, and what if any consideration was provided for this transfer. A copy of the June 25, 2013 gift deed is attached as **Exhibit B**.

**Response:** The Defendant made the above mentioned transfer as part of her estate planning. The Defendant has made changes to who she wants take care of the property based on her relationship with that individual. At the time of this transfer, the Defendant believes that she may have had issues with Jerome Johnson and did not want him to care for the Property if something happened to her.

14. Explain why the Colemans Lake Property was transferred pursuant to the gift deed executed on March 8, 2005, what purpose was served by this transfer, and what if any

consideration was provided for this transfer. A copy of the March 8, 2005 gift deed is attached as **Exhibit A.**

**Response:** The transfer was made for estate planning purposes. As stated before, the Defendant is elderly. The transfer was made to ensure that in the case that she should pass, the Property would be taken care of by individuals that the Defendant trusts. The understanding was that the Property still remained the Defendant's Property, but that if anything should happen to her, the individuals on the gift deed would be able to make the necessary protections and upkeep to the Property in her stead.

15. Please explain what role, if any, you had at Legacy Wealth Properties, LLC; what tasks they performed for the company; what responsibilities they undertook for the company, or the purpose of their membership interest and explain what consideration was paid for their membership interests.

**Response:** The Defendant did not have a role in Legacy Wealth Properties, LLC.

16. Identify all oral communications and written communications (including emails), for which you have not previously produced documents, between you, the Debtors, Emeri M. Johnson, Gabriella A. Johnson, or the Managers or members of Legacy Wealth Properties, LLC regarding the transfer of any real estate owned by Legacy Wealth Properties, LLC.

**Response:** The Defendant did not have too many discussions about transfers of real estate owned by Legacy Wealth Properties, LLC. If she did speak about any transfers, it was done orally. Jerome Johnson attempted to minimize the amount of information Defendant received so she wouldn't be worried or stressed by his own financial hardships.

17. To the extent that you contend that any physical or mental condition affects your memory of the transactions at issue in this case, or any facts regarding the Debtor or this Adversary Proceeding, please explain that condition and how your memory is affected.

**Response:** The Defendant is an elderly woman, so there may or may not be things she remembers. Further, the Defendant was not fully informed about everything going on with the property or about the financial situation involving the Debtors and the property.

Dated: April 28 2022

Respectfully submitted,

Mary Ella Johnson

Mary Ella Johnson

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date the foregoing Objections to Plaintiff's First Set of Interrogatories was served electronically on all parties or counsel of record entitled to notice, and in addition, by regular first class mail, postage pre-paid, on:

BRADLEY D. JONES
Counsel for Donald F. King Trustee, Plaintiff
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Phone: 703-218-2176
Fax: 703-218-2160
Brad.Jones@ofplaw.com

Date: May 3, 2022

/s/ Craig M. Palik

Craig M. Palik